## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ALABAMA
## NORTHEASTERN DIVISION

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | ) | |
| | ) | |
| **vs.** | ) | **5:93-CR-00137-SLB-SGC-1** |
| | ) | |
| **NORMAN J. MOORE,** | ) | |
| | ) | |
| **Defendant.** | ) | |

### MEMORANDUM OPINION

This matter comes before the court on Defendant Norman J. Moore's

"Emergency Motion to Modify Sentence," pursuant to 18 U.S.C. § 3582(c)(1)(A),

because of the current COVID-19 pandemic and changes to 18 U.S.C. § 924(c)

made by the First Step Act of 2018.  (Doc. 149).[1]  In his motion, Mr. Moore seeks

compassionate release because he is at high risk of COVID-19, he received an

unfairly long sentence, and he does not present a danger to the public.  (*Id.*).  After

reviewing the submissions of the parties, the court finds that Mr. Moore has shown

extraordinary and compelling reasons warranting compassionate release under

Section 3582(c)(1)(A).  Thus, the court will grant Mr. Moore's motion.

## I.      BACKGROUND

In 1993, when he was 20 years old, Mr. Moore and two codefendants

---

[1] Reference to a document number, ["Doc. ___"], refers to the number assigned to each document as it is filed in the court's record.  Page number citations refer to the page numbers assigned to the document by the court's CM/ECF electronic filing system.

engaged in two armed carjackings that included threats of lethal violence and brandishing of guns at the victims.  (Doc. 78 at 2–6).  During the carjackings, Mr. Moore acted to stop one of his codefendants from shooting anyone and from attacking one victim with a hammer.  (*Id.* at 4–5).  At the time that he was convicted, Mr. Moore was a member of a gang and had multiple previous convictions for theft; he committed the offenses that led to his current sentence shortly after being released from prison for one of his previous convictions.  (*Id.* at 9–14).

A jury convicted Mr. Moore of one count of conspiracy to commit carjacking in violation of 18 U.S.C. § 371, two counts of carjacking in violation of 18 U.S.C. § 2119, and two counts of using a firearm during a crime of violence in violation of 18 U.S.C. § 924(c).  (Doc. 78 at 2–3); *United States v. Moore*, 43 F.3d 568, 570 (11th Cir. 1994).  After the initial jury verdict finding Mr. Moore guilty, the trial court entered a judgment of acquittal on Mr. Moore's two Section 924(c) convictions because of double jeopardy concerns.  *Moore*, 43 F.3d at 570.  The trial court then sentenced Mr. Moore to a total of 175 months' imprisonment for his carjacking offenses—which was at the high end of the applicable Sentencing Guidelines—because of the "extreme nature of the defendant's conduct here." (Doc. 61 at 23–24).

Upon appeal, that sentence did not stand.  The Eleventh Circuit held that Mr. Moore's convictions for both carjacking and for Section 924(c) violations did not implicate double jeopardy concerns.  *Moore*, 43 F.3d at 574.  The Court vacated the district court's judgments of acquittal and remanded for sentencing on Mr. Moore's Section 924(c) convictions.  *Id.*

At the time that he was sentenced, Mr. Moore's first Section 924(c) conviction carried a 5-year consecutive mandatory minimum sentence, while his second Section 924(c) conviction carried a 20-year consecutive mandatory minimum sentence.  *See* 18 U.S.C. § 924(c) (1993); (Doc. 86 at 7).  Thus, because the Eleventh Circuit did not vacate the sentences for Mr. Moore's other convictions and because of the mandatory minimum sentence requirements under Section 924(c), the district court ultimately sentenced Mr. Moore to an additional 25 years of imprisonment on top of his original 175-month sentence, resulting in a total sentence of roughly 39.6 years' imprisonment.  (Doc. 86 at 20).  Judge William Acker, the sentencing judge, expressed dismay at having to impose such a long sentence and stated at sentencing that the sentence was unfair.  (*Id.* at 3).

Currently, Mr. Moore is incarcerated at Yazoo City Medium FCI.  *See* https://www.bop.gov/inmateloc/ (last visited March 5, 2021).  He has served more than 25 years of his sentence with a release date currently scheduled for October 5, 2027.  *Id.*  Yazoo City Medium FCI currently has 24 active inmate cases of

COVID-19 and 6 active staff cases.  *See* https://www.bop.gov /coronavirus/ (last visited March 5, 2021).

Mr. Moore is now 48 years old.  https://www.bop.gov/inmateloc/ (last visited March 4, 2021).  Mr. Moore's prison medical records show that, since childhood, he has suffered from chronic asthma.  (Doc. 162).  The records show that his asthma is exercise induced and has not required intubation, but requires multiple inhalers—including a steroid inhaler prescribed for daily use—to keep it well managed.  (*Id.*).  Prison records submitted by Mr. Moore show that he has completed his GED, completed a drug treatment program, and taken roughly 20 education courses while incarcerated.  (Doc. 161 at 13–16).

Mr. Moore indicates that he requested compassionate release from the warden of his correctional institution before filing the instant motion but never received a response.  (Doc. 149-2 at 14).

## II.    STANDARD OF REVIEW

Mr. Moore seeks a reduction in sentence to time served pursuant to Section 3582(c)(1)(A).  Section 3582, as amended by the First Step Act, states that courts generally cannot alter or modify a term of imprisonment after its imposition, but the court can reduce an inmate's term of imprisonment upon a motion for sentence modification from the Bureau of Prisons or from a prisoner, where the prisoner has exhausted administrative remedies.  18 U.S.C. § 3582(c)(1)(A).  Prior to passage of

4

the First Step Act, however, courts could only reduce an inmate's sentence under Section 3582(c)(1)(A) upon a motion from the Director of the Bureau of Prisons. 18 U.S.C. § 3582(c)(1)(A) (effective November 2, 2002 to December 20, 2018). The First Step Act amended Section 3582(c)(1)(A) to allow courts to also reduce a defendant's term of imprisonment upon a motion filed directly by the defendant, after the exhaustion of administrative remedies.  Section 603(b) of the First Step Act of 2018, Pub. L. 115 391, 132 Stat. 5194; 18 U.S.C. § 3582(c)(1)(A).

Upon a prisoner's exhaustion of administrative remedies, Section 3582(c)(1)(A) allows a court to modify the prisoner's sentence "after considering the factors set forth in section 3553(a) to the extent that they are applicable" *if* the court finds that "extraordinary and compelling reasons warrant such a reduction" *and* finds that "such a reduction is consistent with applicable policy statements issued by the Sentencing Commission."  18 U.S.C. § 3582(c)(1)(A).

The relevant policy statement for Section 3582(c)(1)(A), found in U.S.S.G. § 1B1.13, states that, "[u]pon motion of the Director of the Bureau of Prisons under 18 U.S.C § 3582(c)(1)(A), the court may reduce a term of imprisonment […] if, after considering the factors set forth in 18 U.S.C. § 3553(a), to the extent that they are applicable," the court finds that (1) "extraordinary and compelling reasons warrant the reduction" or that the defendant meets certain age-based requirements, (2) the defendant is not a danger to the community, and (3) "[t]he reduction is

consistent with this policy statement." U.S.S.G. § 1B1.13. The commentary to U.S.S.G. § 1B1.13 provides a list of specific circumstances that qualify as "extraordinary and compelling," including medical conditions, age, and family circumstances. U.S.S.G. § 1B1.13 cmt. 1(A)–(C). The list culminates in subsection (D), a catchall provision entitled "other reasons," which states that extraordinary and compelling reasons exist where, "as determined by the Director of the Bureau of Prisons, there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C)." *Id.* at cmt. 1(D). Accordingly, the policy statement limits extraordinary and compelling circumstances to those listed in the commentary or determined by the Director of the Bureau of Prisons. *Id.* The commentary for U.S.S.G. § 1B1.13 also includes a provision stating that a sentence reduction "under this policy statement may be granted only upon motion by the Director of the Bureau of Prisons […]." *Id.* at cmt. 4.

Some question exists concerning whether the policy statement as set forth in U.S.S.G. § 1B1.13 actually applies to Section 3582(c)(1)(A) motions filed directly by prisoners after the passage of the First Step Act. In its only published opinion concerning a motion for compassionate release based on COVID-19 filed by a prisoner, the Eleventh Circuit stated in a footnote that, in that particular case, "We need not and do not reach the issue of whether the district court was required to

consider § 1B1.13." *United States v. Harris*, No. 20-12023, 2021 WL 745262, at

*3 n. 2 (11th Cir. Feb. 26, 2021).  The Eleventh Circuit has yet to issue a published

opinion on the question of what Sentencing Commission policy statements apply to

motions for compassionate release filed by prisoners rather than the Bureau of

Prisons.  *United States v. Gist*, No. 20-13481, 2020 WL 7227282, at *2 n.2 (11th

Cir. Dec. 8, 2020) (unpublished) (noting that the Eleventh Circuit has recently held

oral argument implicating the issue but has not yet put forth a decision resolving

the applicability question).  Further, the current unpublished opinions from the

Eleventh Circuit offer little clear guidance.

     In one unpublished opinion, a panel of the Eleventh Circuit stated that the

Sentencing Commission had identified the circumstances listed in the commentary

to U.S.S.G. § 1B1.13 as "constituting 'extraordinary and compelling reasons'"

warranting relief, and affirmed the district court's denial of a motion for

compassionate release because the prisoner's situation did not fall under the

circumstances listed in the commentary.  *United States v. Wedgeworth*, No. 20-

12316, 2020 WL 7389350, at *1–*2 (11th Cir. Dec. 16, 2020) (unpublished)

(citing U.S.S.G. § 1B1.13, cmt. 1).  In a similar unpublished opinion, the court

stated that "[a] district court must find that a sentence reduction for extraordinary

and compelling reasons is consistent with policy statements issued by the

Sentencing Commission" and explained that U.S.S.G. § 1B1.13 provides

"examples of extraordinary and compelling reasons for a sentence reduction." *United States v. Mantack*, 833 F. App'x 819 (11th Cir. 2021).  However, the Court did not explicitly state in either case that any policy statement was applicable for motions filed by prisoners or that no other circumstance could qualify as "extraordinary and compelling."

Further, in another unpublished opinion, a different panel of the Eleventh Circuit observed that "notably" the policy statement in U.S.S.G. § 1B1.13 "has not been amended since the First Step Act was passed and refers only to a sentence reduction upon a motion from the BOP Director."  *Id.* at *1.  Finally, other recent unpublished opinions have not directly addressed the applicability of policy statements to Section 3582(c)(1)(A) motions filed by prisoners.  *See, e.g.*, *United States v. Winner*, 835 F. App'x 1002, 1003 (11th Cir. 2020) (unpublished); *United States v. Rind*, No. 20-12860, 2020 WL 7392878 (11th Cir. Dec. 17, 2020) (unpublished); *United States v. Boykin*, No. 20-12111, 2021 WL 210705 (11th Cir. Jan. 21, 2021) (unpublished).  Accordingly, the current Eleventh Circuit jurisprudence does not give a clear answer on the question of whether the Sentencing Commission policy statement applies and binds the court where a prisoner files a motion for compassionate release under Section 3582(c)(1)(A).

Considering the lack of binding precedent or clear direction from the Eleventh Circuit, this court turns to the developing trend of jurisprudence in other

Circuits.  In September of last year, the Second Circuit held that the policy statement in U.S.S.G. § 1B1.13 does *not* apply to Section 3582(c)(1)(A) motions filed by prisoners, rather than the Bureau of Prisons, because the language of the policy statement is clearly outdated and states explicitly in multiple places that it applies upon motions filed by the Director of the Bureau of Prisons.  *United States v. Brooker*, 976 F.3d 228, 236 (2d Cir. 2020).  Specifically, the Second Circuit stated

> we look also to Application Note 4, which says that "[a] reduction *under this policy statement* may be granted only upon motion by the Director of the Bureau of Prisons pursuant to 18 U.S.C. § 3582(c)(1)(A)."  U.S.S.G. § 1B1.13, n.4 (emphasis added).  And we conclude that after the First Step Act, this language must be read not as a description of the former statute's requirements, but as defining the motions to which the policy statement applies.  A sentence reduction brought about not "upon motion by the Director of the Bureau of Prisons" is not a reduction "under this policy statement." *Id.*  In other words, if a compassionate release motion is not brought by the BOP Director, Guideline § 1B1.13 does not, by its own terms, apply to it.  Because Guideline § 1B1.13 is not "applicable" to compassionate release motions brought by defendants, Application Note 1(D) cannot constrain district courts' discretion to consider whether any reasons are extraordinary and compelling.

*Id.* (emphasis in original).  Accordingly, the Second Circuit held that courts have discretion "to consider the full slate of extraordinary and compelling reasons that an imprisoned person might bring before them in motions for compassionate release."  *Id.* at 237.

Now, the Fourth, Sixth, and Seventh Circuits have agreed with the Second Circuit's holding in *Brooker* and have held that there is no applicable Sentencing Commission policy statement where a prisoner directly files a Section 3582(c)(1)(A) motion, such that courts may exercise discretion in determining whether a prisoner has shown extraordinary and compelling circumstances warranting compassionate release.  *United States v. McCoy*, 981 F.3d 271, 281–83 (4th Cir. 2020); *United States v. Jones*, 980 F.3d 1098, 1109–11 (6th Cir. 2020); *United States v. Gunn*, 980 F.3d 1178, 1180–81 (7th Cir. 2020).  Currently, no Circuit Court has clearly endorsed in a published opinion the opposite holding that the policy statement in U.S.S.G. § 1B1.13 applies to Section 3582(c)(1)(A) motions filed directly by prisoners and binds courts' determination of extraordinary and compelling circumstances.

This court finds the reasoning of the Second, Fourth, Sixth, and Seventh Circuits persuasive and notes that such reasoning appears to complement the Eleventh Circuit's recent observation in an unpublished opinion that the policy statement in U.S.S.G. § 1B1.13 "notably" has not been updated since the passage of the First Step Act and refers only to motions filed by the Director of the Bureau of Prisons.  *Gist*, No. 20-13481, 2020 WL 7227282, at *1.  Further, reading the policy statement as inapplicable and nonbinding does not mean that it cannot offer guidance in determining extraordinary and compelling circumstances for Section

3582(c)(1)(A) motions filed by prisoners.  *See United States v. Thompson*, 984 F.3d 431, 433 (5th Cir. 2021) (stating that, "[a]lthough not dispositive, the commentary to the United States Sentencing Guidelines ('U.S.S.G.') § 1B1.13 informs our analysis as to what reasons may be sufficiently 'extraordinary and compelling' to merit compassionate release").  Thus, a finding that the policy statement is not applicable and not binding does not necessarily conflict with the Eleventh Circuit's unpublished opinions in *Wedgeworth* and *Mantack* and their references to the policy statement and commentary.  *See Wedgeworth*, No. 20-12316, 2020 WL 7389350, at *1–*2; *Mantack*, 833 F. App'x at 819.

The policy statement in U.S.S.G. § 1B1.13 begins "[u]pon motion of the Director of the Bureau of Prisons" and the commentary states that a reduction in sentence under U.S.S.G. § 1B1.13 "may only be granted upon a motion by the Director of the Bureau of Prisons."  U.S.S.G. § 1B1.13 & cmt. 4.  This court agrees with the current published jurisprudence from the Circuit Courts that, therefore, the policy statement applies only to motions filed by the Director of the Bureau of Prisons and does *not* apply to Section 3582(c)(1)(A) motions filed directly by prisoners after the passage of the First Step Act.  *See Brooker*, 976 F.3d at 236; *see also McCoy*, 981 F.3d at 281–83; *Jones*, 980 F.3d at 1109–11; *Gunn*, 980 F.3d at 1180–81.  Therefore, courts are not constrained by U.S.S.G. § 1B1.13 and its commentary when determining whether a prisoner has made the requisite showing

11

of extraordinary and compelling circumstances to qualify for compassionate release under Section 3582(c)(1)(A). *See Brooker*, 976 F.3d at 237.

## III.   DISCUSSION

In his motion seeking relief pursuant to Section 3582(c)(1)(A), Mr. Moore argues that he should be entitled to compassionate release because he is no longer a danger to the public, as he has completed educational programs in prison, has completed drug treatment and psychological therapy, has severed all gang ties, and has avoided violent activity for the last 15 years. (Doc. 149-2). Mr. Moore argues that the court should waive the administrative exhaustion requirements under the statute and consider his motion despite a lack of proper exhaustion; however, he also states that he requested administrative relief and did not receive a response from the warden of his correctional institution. (*Id.* at 3–4, 14). He argues that he has extraordinary and compelling reasons justifying compassionate release because inmates have heightened vulnerability to the COVID-19 pandemic due to the many difficulties controlling the virus in prisons. (*Id.* at 5–9). He also states that he is at increased risk from COVID-19 because he has chronic asthma requiring regular use of an inhaler and steroids. (*Id.* at 9–10).

Mr. Moore also argues that the court should grant him compassionate release because of recent changes to Section 924(c) made by the First Step Act. (*Id.* at 11–12). He asserts that, if he were sentenced now, he would receive a lighter sentence,

which merits relief under Section 3582(c)(1)(A). (*Id.* at 12). He notes that even his sentencing judge recognized that his long sentence was unfair. (*Id.* at 13–14). He argues that his unfair sentence, combined with his risk of contracting a severe case of COVID-19, merits a reduction in sentence to time served. (*Id.* at 15). Mr. Moore provided a release plan in which he would live with his mother and then, later, with an uncle who will provide him employment. (Doc. 160). He also provided an affidavit stating that he had been transferred to Yazoo City Medium FCI and that the prison was not taking adequate steps to contain COVID-19. (Doc. 161).

The government filed a response in opposition to Mr. Moore's motion for compassionate release. (Doc. 173). As an initial matter, the government does not contest that Mr. Moore properly exhausted his administrative remedies, but, rather, opposes his motion on the merits. (*Id.* at 1). The government argues that Mr. Moore's asthma is relatively mild and well controlled with his inhalers, so he does not have elevated risk of contracting a severe case of COVID-19. (*Id.* at 1–4). The government further asserts that Mr. Moore's long sentence for his Section 924(c) conviction is not an extraordinary and compelling reason warranting relief under Section 3582(c)(1)(A) because he is trying to obtain "backdoor" relief under a nonretroactive provision of the First Step Act. (*Id.* at 5–7; 10–12). The government argues that reducing Mr. Moore's sentence would not comport with

the applicable policy statements accompanying Section 3582(c)(1)(A) that set forth

extraordinary and compelling circumstances warranting a sentence reduction.  (*Id.*

at 7–10).  Finally, the government argues that the application of the 18 U.S.C.

§ 3553(a) factors does not support compassionate release because Mr. Moore

engaged in two violent carjackings that involved threats of lethal violence and he

already had a significant criminal history when he was arrested for the instant

offenses.  (*Id.* at 12–13).

Mr. Moore then filed a response asserting that the COVID-19 situation at

Yazoo City Medium had gotten even worse.  (Doc. 176).  He also filed another

response asserting that his asthma did qualify as an underlying condition elevating

his risk of contracting a severe case of COVID-19 because his asthma is not so

mild as to not be a problem and he requires a daily inhaler to control his asthma.

(Doc. 177).  He also argues that the law does not preclude granting relief because

of his long sentence for his Section 924(c) conviction.  He supports his argument

by stating that no applicable policy statement currently exists defining

extraordinary and compelling circumstances warranting a reduction in sentence.

(*Id.*).

In this case, Mr. Moore stated that he requested compassionate release from

the warden of his correctional institution and did not receive a response; the

government does not contest that he properly exhausted his administrative

remedies.  *See* 18 U.S.C. § 3582(c)(1)(A); (doc. 149); (doc. 173 at 1).  Thus, the

court can consider the merits of Mr. Moore's motion for sentence reduction.

Because, as discussed above, no Sentencing Commission policy statement applies

to a Section 3582(c)(1)(A) motion filed directly by a prisoner—like Mr. Moore's

motion—the court must determine whether Mr. Moore has shown "extraordinary

and compelling reasons" warranting a reduction in sentence and whether

consideration of the Section 3553(a) factors supports compassionate release.  *See*

*Brooker*, 976 F.3d at 236–37; 18 U.S.C. § 3582(c)(1)(A).

Here, extraordinary and compelling reasons warrant a reduction in Mr.

Moore's sentence.  First, Mr. Moore's asthma, in combination with the current

COVID-19 pandemic and the difficulty combatting the virus in prisons, helps to

establish extraordinary and compelling circumstances warranting release.  The

CDC lists asthmatics as one group of people who should take extra precautions to

protect against COVID-19, stating that people with moderate to severe asthma

"might be at increased risk" of getting severely ill from COVID-19.  *See*

https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-

medical-conditions.html#asthma  (last visited March 5, 2021).  Because of this

risk, the CDC recommends that people with moderate to severe asthma avoid close

contact with other people and stay away from anyone with the virus, among other

precautions.  *Id.*

Mr. Moore's medical records show that he has chronic asthma, but do not clearly state the severity of his condition.  (Doc. 162).  In 2020, Mr. Moore was placed on a daily corticosteroid inhaler because he was having to use his albuterol rescue inhaler frequently—"at least every other day."  (Doc. 173-1 at 25, 32).   In light of his previous frequent use of a rescue inhaler, he appears to potentially fall into the category of someone with moderate to severe asthma because, prior to steroid treatment, he was using a rescue inhaler as frequently as daily and required additional medication to control his asthma.  *See Classification of Asthma*, https://www.uofmhealth.org/health-library/hw161158 (last visited March 5, 2021). Accordingly, Mr. Moore potentially falls into the class of people who should follow the CDC's guidelines to avoid contracting COVID-19 for people who might be more susceptible to a severe case of the virus.  *See* https://www.cdc.gov/ coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html#asthma  (last visited March 5, 2021).

However, Mr. Moore cannot effectively take those steps while incarcerated. Correctional institutions create extreme challenges in controlling the spread of COVID-19 because of a lack of resources and difficulties keeping those who have the virus or have been exposed to the virus separate from uninfected inmates.  *See* Patricia Davidson, et al., *Open Letter to Hon. Larry Hogan, Governor of Maryland*, https://bioethics.jhu.edu/wp-content/uploads/2019/10/Johns-Hopkins-

faculty-letter-on-COVID-19-jails-and-prisons.pdf (last visited March 5, 2021)

(letter from numerous faculty members at Johns Hopkins University schools of

medicine, nursing, and public health stating that prisons are associated with high

transmission rates of infectious diseases and opining that the close quarters,

inability to social distance, and lack of resources for sanitization in prisons

heightens the COVID-19 risk); *see also* Brendan Saloner, et. al, *COVID-19 Cases*

*and Deaths in Federal and State Prisons*, 324 JAMA 6 (2020) (stating that

COVID-19 "represents a challenge to prisons because of close confinement [and]

limited access to personal protective equipment"). Yazoo City Medium FCI

currently has active cases of COVID-19, which creates a high risk of the virus

spreading and makes it extremely difficult for an inmate like Mr. Moore to stay

away from people with the virus. *See* https://www.bop.gov/coronavirus/ (last

visited March 5, 2021); *see also* Gregg S. Gonsalves, et al., *Achieving a Fair and*

*Effective Covid-19 Response: an Open Letter to Vice-President Mike Pence, and*

*other Federal, State and Local Leaders from Public Health and Legal Experts in*

*the United States;* https://law.yale.edu/sites/default/files/area/center/ghjp

/documents/final_covid-19_letter_from_public_health_and_legal_experts.pdf (last

visited February 3, 2021) (open letter signed by hundreds of legal and health

professionals stating that individuals "residing in close quarters," including people

incarcerated in prisons, "are especially vulnerable to COVID-19"); *United States v.*

*Potts*, No. 06-80070-CR, 2020 WL 5540126, at *3 (S.D. Fla. Sept. 14, 2020) (stating that, "[d]ue to the conditions under which inmates live, they are at extreme risk of infection once COVID-19 breaches prison walls").  In light of these conditions, Mr. Moore likely cannot follow the CDC guidelines for people with moderate to severe asthma.

Therefore, Mr. Moore has shown that he potentially faces an elevated risk of contracting a severe case of COVID-19 because of his underlying asthma and the difficulties controlling the spread of COVID-19 in prisons.  Under those circumstances, Mr. Moore's health issues are sufficiently serious, in light of the COVID-19 pandemic, to meaningfully contribute to a showing of extraordinary and compelling circumstances warranting compassionate release.

But, Mr. Moore need not rely solely on his health issues to show extraordinary and compelling circumstances warranting compassionate release; Mr. Moore's lengthy sentence, comprised of stacked Section 924(c) sentences that would no longer be imposed after the passage of the First Step Act, bolsters his showing of extraordinary and compelling circumstances.  While the Eleventh Circuit has not currently addressed the issue, the Fourth Circuit has held that long sentences for stacked Section 924(c) convictions can be treated as extraordinary and compelling reasons for a reduction in sentence, noting with approval that "multiple district courts have concluded that the severity of a Section 924(c)

sentence, combined with the enormous disparity between that sentence and the
sentence a defendant would receive today, can constitute an 'extraordinary and
compelling' reason for relief under § 3582(c)(1)(A)." *McCoy*, 981 F.3d at 286–87.
This court will likewise take into consideration Mr. Moore's lengthy sentence and
the disparity in sentences received by defendants after the passage of the First Step
Act.

 Mr. Moore has already served more than the 175-month sentence imposed
for his violent carjacking crimes; the lion's share of his sentence has instead been
comprised of his stacked consecutive mandatory sentences for his two
simultaneous Section 924(c) convictions.  In 2018, Congress passed the First Step
Act and changed the language of Section 924(c) to avoid the "stacking" of Section
924(c) convictions charged in the same indictment; under the First Step Act, only a
Section 924(c) violation committed after a prior conviction for a Section 924(c)
offense has become final triggers an extra-long consecutive mandatory minimum
sentence.  Section 403(a) of the First Step Act of 2018, Pub. L. No. 115-391, 132
Stat. 5194 (2018).  As the government points out in its arguments against granting
relief, that change does not apply retroactively.  *Id.*  But, as the Fourth Circuit has
held, "[t] he fact that Congress chose not to make § 403 of the First Step Act
categorically retroactive does not mean that courts may not consider that legislative
change in conducting their individualized reviews of motions for compassionate

release under § 3582(c)(1)(A)(i)" because considering the individual circumstances in egregious cases is different than an "automatic vacatur." *McCoy*, 981 F.3d at 286–87.  Here, the court finds that Mr. Moore's individual circumstances rise to the level of extraordinary and compelling and warrant compassionate release.

The recent changes to the sentencing paradigm for Section 924(c) offenses instituted by the First Step Act create a large disparity between Mr. Moore's sentence and the sentences of those who have committed the same offense since the passage of the First Step Act.  Further, even before the passage of the First Step Act, the district court stated at Mr. Moore's sentencing that the stacking of Mr. Moore's Section 924(c) convictions, on top of his originally imposed 175-month sentence, was "inherently unfair."  (Doc. 86 at 3).  Judge Acker, the sentencing judge, said that if he had known about the Section 924(c) convictions at the original sentencing, he would have "tried to find a way" to give a sentence of "25 years at the maximum."  (*Id.* at 17).  But, Judge Acker instead found that his "hands [were] tied" and he had to sentence Mr. Moore to longer than he thought was fair.  (Doc. 86 at 10).

The passage of the First Step Act has exacerbated the underlying unfairness identified by Judge Acker at Mr. Moore's sentencing.  The court cannot help but note that, if Mr. Moore were sentenced for his convictions today, he would face a *much* shorter sentence because no 20-year mandatory minimum would apply to his

second Section 924(c) offense.  The severity of Mr. Moore's imposed sentence, which Judge Acker lamented, along with the new sentencing disparity for Section 924(c) offenses after the passage of the First Step Act, support a finding of extraordinary and compelling circumstances in this case.  Thus, the court finds that Mr. Moore's extremely lengthy sentence, combined with his potentially elevated risk from the current COVID-19 pandemic, supports a finding of extraordinary and compelling circumstances warranting compassionate release.  *See* 18 U.S.C. § 3582(c)(1)(A).

The court also finds that consideration of the factors set forth in Section 3553(a) supports compassionate release.  *See id.*  Section 3553(a) requires courts to impose sentences that are "sufficient, but not greater than necessary" in light of a multitude of factors.  18 U.S.C. § 3553(a).  Those factors include, among other things, the history and characteristics of the defendant, the need for the sentence imposed to reflect the seriousness of the offense and provide just punishment, the types of sentence available, and "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct."  *Id.*  Here, the factors support a reduction in Mr. Moore's sentence.

First, Mr. Moore's history and characteristics support reducing his sentence.  *See* 18 U.S.C. § 3553(a).  It is true that Mr. Moore committed dangerous violent

crimes, but he was only 20 years old when he committed the armed carjacking offenses that led to his incarceration and was only a teenager when he committed the thefts that make up the rest of his criminal history.  (Doc. 78).  Further, Mr. Moore actually acted to prevent one of his codefendants from shooting anyone or attacking one of the victims with a hammer.  (*Id.* at 4–5).  Since committing his crimes, Mr. Moore has spent virtually his entire adult life—more than 25 years—in prison and his prison record shows that he has taken many steps to improve himself: he obtained his GED, took advantage of many other educational opportunities, and underwent drug treatment.  (Doc. 161 at 13–16).  He also states that he has severed his gang ties and has avoided violence for the last 15 years. (Doc. 149).  Mr. Moore has clearly focused on bettering himself while in prison and remediating the behaviors that led him to commit criminal acts in his youth.

Further, as discussed above, a large sentencing disparity now exists between Mr. Moore's sentences for his Section 924(c) convictions and the Section 924(c) sentences of similarly situated defendants sentenced after the passage of the First Step Act.  Section 3553(a) seeks to avoid such disparities.  *See* 18 U.S.C. § 3553(a).  Finally, Mr. Moore has already served more than 25 years in prison for his offenses, more than the maximum sentence that Judge Acker indicated that he would have liked to impose.  (Doc. 86 at 17).  Thus, Mr. Moore's sentence as currently served adequately reflects the seriousness of his crimes and promotes the

interests of justice.  *See* 18 U.S.C. § 3553(a).  Accordingly, after considering the Section 3553(a) factors, the court finds that Mr. Moore has served a custodial sentence that is sufficient to reflect the seriousness of his crimes.  *See id.*

Because Mr. Moore has shown extraordinary and compelling reasons for a reduction in his sentence and the Section 3553(a) factors favor release, the court finds that, pursuant to Section 3582(c)(1)(A), Mr. Moore's custodial sentence should be reduced to time served.  Accordingly, the court **WILL GRANT** Mr. Moore's emergency motion for a reduction in sentence, (doc. 149), and reduce his sentence to time served.  However, the court notes that Mr. Moore still must serve his originally imposed term of supervised release.

For the safety of Mr. Moore and the community, he shall self-quarantine at his approved residence for 14 days upon his release, except for necessary medical treatment and only upon prior notice and approval by the probation officer, except in a true emergency.

**DONE** and **ORDERED** this 5th day of March, 2021.

SHARON  LOVELACE  BLACKBURN
UNITED STATES DISTRICT JUDGE